UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JESPER DAHL,

    Plaintiff,

v.

TRANS TRADE BROKERS, INC., a Texas corporation f/k/a TRANS-TRADE, INC.; BRAD SKINNER, an individual; and JOHN DOES 1-10,

    Defendants.

Case No. C11-1993RSL

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendants' "Motion to Dismiss Plaintiff's Claims pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6)" (Dkt. # 8).[1] Defendants argue that the parties' employment contract limits venue exclusively to Delaware. They argue also that Plaintiff has failed to state claim under Delaware law. For the reasons set forth below, the Court DENIES Defendants' motion. The operative agreement does not limit venue to Delaware, and the Court must deny Defendants' 12(b)(6) motion in light of the present ambiguity surrounding the choice of law issues.

## I. BACKGROUND

This case concerns a dispute over unpaid severance benefits. Prior to being fired, Plaintiff Jesper Dahl worked for Defendant Trans-Trade as a senior vice-president. Complaint (Dkt. # 1-2) at ¶¶ 7, 13. Defendant Brad Skinner was his boss. Id. at ¶ 8.

---

[1] Defendant Skinner joined in Trans-Trade's motion. Dkt. # 13.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 1

At the time of his termination, Plaintiff was working under an employment contract. <u>See</u> Dkt. # 9-2 (the "Employment Agreement"). As is relevant to this motion, that contract provided that Plaintiff would receive specific severance benefits if he was fired without cause, provided he signed "a general release of all claims against the Company and its affiliates." <u>Id.</u> at ¶ 5.1. The agreement also provided that Delaware law would control in the event of a dispute and that Delaware would be the exclusive forum for resolving any dispute. <u>Id.</u> at ¶ 15.

On July 7, 2011, Defendant Trans-Trade fired Plaintiff without cause. Dkt. # 1-2 at 3. Per the terms of his employment contract, Plaintiff executed a "Release and Non-Disparagement Agreement." Dkt. # 9-4 at 2. That agreement specifies that, in exchange for releasing certain claims against Trans-Trade, <u>id.</u> at ¶¶ 2–6, Plaintiff would receive "the benefits and payments specified in <u>Section 5.1</u> of the [Employment] Agreement." <u>Id.</u> at ¶ 1 (emphasis in original). This appears to include "payment of all accrued and unpaid Base Salary," Dkt. # 9-2 at ¶ 5.1(a), and "continuation of [his] Base Salary" through "the expiration of the Initial [Contract] Term," <u>id.</u> at ¶ 5.1(b).

Notably, though, the Release Agreement differs from each of the prior contracts in one very important respect. It does not limit venue to Delaware. Dkt. # 9-4. And like each of the prior contracts, the Release contains a thorough merger clause that states that it "contains the entire agreement and understanding of the parties . . . and supercedes all prior and contemporaneous discussions, agreements and understandings of every nature relating to the subject matter" contained therein. <u>Id.</u> at ¶ 9.5.

On October 31, 2011, Plaintiff filed suit in King County Superior Court. In his Complaint, he alleged that Defendants had breached the Release Agreement by both refusing to provide him with certain "benefits, including but not limited to health insurance," since his termination and by failing to pay his salary after September 26, 2011. Dkt. # 1-2 at ¶¶ 18–19. Defendants timely removed to federal court. Dkt. # 1.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 2

## II. DISCUSSION

**A. Venue**

The Court first addresses Defendants' claim that the present suit must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) because the terms of the parties' agreement limits venue to Delaware. The Court disagrees.

**1. Standard of Review**

"[B]ecause [Defendants'] motion to enforce a forum selection clause is made pursuant to Fed. R. Civ. P. 12(b)(3), the pleadings need not be accepted as true, Richards v. Lloyd's of London, 135 F.3d 1289, 1292 (9th Cir. 1998), and the court may consider facts outside of the pleadings." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004) (citation omitted). The Court must, however, "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Id.

**2. Analysis**

Defendants base their contention on the terms of the Employment Agreement, arguing that it—and not the Release—controls because Plaintiff filed suit under Washington and Delaware's "wage statutes," Dkt. # 1-2, . Reply (Dkt. # 1-2) at 2–5. Defendants' point is not entirely off the mark. Were the Court to agree that Plaintiff seeks something distinct from the consideration guaranteed him under the terms of the Release, those claims would indeed be subject to the original Agreement's forum-selection clause, Dkt. # 9-2 at ¶ 15. See Ingres Corp. v. CA, Inc., 8 A.3d 1143, 1146 (Del. 2010) ("Forum selection . . . clauses are presumptively valid and should be specifically enforced unless the resisting party . . . clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud and overreaching." (alterations in original) (citation and internal quotations marks omitted)); accord Bank of Am., N.A. v. Miller, 108 Wn. App. 745, 748 (2001) (A "party arguing that the forum selection clause is unfair or unreasonable bears a heavy burden of

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 3

showing that trial in the chosen forum would be so seriously inconvenient as to deprive the party of a meaningful day in court"; "[a]bsent evidence of fraud, undue influence, or unfair bargaining power, courts are reluctant to invalidate forum selection clauses as they increase contractual predictability.").

The Court does not agree, however. Plaintiff's Complaint make clear that the basis of his claim is the Release and the withholding of the benefits guaranteed therein. Dkt. # 1-2 at ¶¶ 19–26; Dkt. # 5 ("Similarly, the Complaint does not state a claim for breach of the Employment Agreement. It does, however, identify violations of the Release Agreement."). Accordingly, the Release controls, and, as Defendants concede, that document does not limit venue to Delaware. Dkt. # 23 at 5.

**B. Failure to State a Claim**

The Court next considers Defendants' claim that Plaintiff fails to state a claim upon which relief might be granted. Fed. R. Civ. P. 12(b)(6). The Court is presently unable to answer that question and thus DENIES the motion.

Plaintiff alleges only two causes of action in his original Complaint: that Defendants violated "Washington's Wage Statute," codified in part at RCW 49.48.010 and 49.52.050(2), and, alternatively, Delaware's wage statute, codified in part at 19 Del. Code § 1107, when it failed to pay Plaintiff the salary and benefits owed under the Release. Dkt. # 1-2 at ¶¶ 27–30. To some degree, Plaintiff's case depends on which statute applies. Washington's statute might include the payments and benefits currently in dispute as wages. Cf. Dice v. City of Montesano, 131 Wn. App. 675, 683–90 (2006) ("Here, the three months' [severance] salary due Dice constitutes 'wages' because it derives solely from Dice's employment contract with the City and the amount was calculated according to his employment earnings at the time of discharge."). Delaware's, on the other hand, does not. Nye v. Univ. of Del., 897 A.2d 768, at *4 (Del. 2006) (unpublished table decision) (holding that "severance pay is not a 'wage' subject to collection under the Wage Payment and Collection Act," but can form the basis of a

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 4

breach of contract action (citing Dep't of Labor ex rel. Commons v. Green Giant Co., 394 A.2d 753 (Del. Super. Ct. 1978) (holding that "wages" does not include severance pay))). Accordingly, the Court must determine which law applies.

Ordinarily, "[a] federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012). Citing this principle, Plaintiff urges the Court to apply Washington's law on the enforceability of contractual choice of law provisions—that, "[t]o effectively void a choice of law provision, a court must find that the chosen state has no substantial relationship to the parties or that the application of the chosen law would be contrary to a fundamental policy of Washington." Schnall v. AT&T Wireless Servs., Inc., 171 Wn.2d 260, 267 (2011) (applying the rule set forth in Restatement (Second) Conflict of Laws § 187 (1971)). In doing so, he overlooks a crucial step. The Court must first determine whether Washington's choice of law provisions result in the application of Washington's method for determining the enforceability of a contractual choice of law clause or whether those provisions require this Court to apply a different jurisdiction's standard. See Erwin v. Cotter Health Ctrs., 161 Wn.2d 676, 692–93 (2007).

Therein lies the problem. The Court cannot presently determine with any confidence which state's choice of law provisions it should compare against Washington's because it cannot determine from the record where Defendant Trans-Trade is incorporated.[2] Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) ("We accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party. We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint

---

[2] Neither has Defendant Skinner offered any argument to rebut Plaintiff's additional contention that, even if Defendant Trans-Trade is entitled to invoke the agreements choice of law provision, he is not. See Dkt. # 20.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 5

or matters properly subject to judicial notice." (emphasis added) (citation omitted)). Plaintiff has specifically alleged that Defendant is "headquartered in Dallas, Texas," but "incorporated in Delaware." Dkt. # 1-2 at ¶ 3; accord Dkt. # 24. Yet, the briefs and declarations submitted by both Defendant and Plaintiff in support of this motion suggest that Defendant is a Texas corporation. Opp. (Dkt. # 14) at 8; Reply (Dkt. # 23) at 6. So does the caption of Plaintiff's Complaint. Dkt. # 1-2; accord Dkt. # 24. And, because neither party provided any briefing on the initial choice of law question, the Court cannot glean the insight it might have had either appropriately addressed that crucial threshold issue.

In sum, the Court cannot presently conclude what law it should apply. A conflict of law inquiry is complicated under the best of circumstances, and the Court declines to undertake such an inquiry without the benefit of thorough briefing by the parties[3] and the stable footing of (easily-ascertainable) concrete facts.

### III. CONCLUSION

For all of the foregoing reasons, the Court DENIES Defendants' motion (Dkt. # 8). Venue is appropriate in this district, and the Court lacks sufficient information at this time to grant Defendants' 12(b)(6) motion.

DATED this 27th day of March, 2012.

*MMT S Lasnik*
Robert S. Lasnik
United States District Judge

---

[3] The Court expects that Defendants will want to file a second 12(b)(6) motion as soon as possible. If Plaintiff has not corrected the ambiguity in his Complaint prior to then, the Court would expect to receive sufficient evidence from Defendants to allow it to take judicial notice of Defendant Trans-Trade's state of incorporation.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 6